**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**
**Judge Philip A. Brimmer**

FILED
U.S. DISTRICT COURT
DISTRICT OF NEBRASKA

2026 MAY -6  PM 12: 07

OFFICE OF THE CLERK

8:26mc123

Civil Case No. 25-cv-02942-PAB-CYC

COBANK, ACB,

    Plaintiff,

v.

STRICKS, LLC, and
STRICKS AG, LLC,

    Defendants.

---

## CONSENT ORDER AND JUDGMENT

---

THIS MATTER came before the Court upon Plaintiff CoBank, ACB's Emergency Amended Motion for Immediate Appointment of Limited Receiver (Dkt. No. 45, the "Amended Motion") to appoint a limited receiver over Defendants Stricks, LLC ("Stricks") and Stricks Ag, LLC ("Stricks AG" and together with Stricks the "Defendants"). Defendants consent to the appointment of a limited receiver for the purposes of and with the powers identified herein. The Court, having considered the Verified Complaint and the Amended Motion, and being fully advised on the premises, and for other good cause having been shown,

### HEREBY FINDS AND ORDERS AS FOLLOWS:

1.    The Court has jurisdiction over this matter, including the Defendants and the Defendants' assets, wherever located, except as provided herein.

2.    The Amended Motion is GRANTED on the terms set forth herein.

**Appointment of Limited Receiver**

3.    Creative Planning Business Alliance, LLC (the "Receiver") is hereby appointed as limited receiver over both Stricks, a Montana limited liability company, and Stricks AG a Montana

RECEIVED

MAY - 6 2026

CLERK
U.S. DISTRICT COURT

2

limited liability company, and the Receivership Property (as defined below), wherever situated, for a period commencing on the date of this order and ending upon termination of such appointment by further Order of this Court. It is anticipated that Alex G. Smith shall serve as the primary agent of the Receiver in the execution of its duties as receiver hereunder.

4.    The Receiver may reserve the right to accept this receivership and may enter into a separate agreement with the parties concerning its exposure to liability.

5.    The Receiver shall not be required to post a bond.

**Receivership Property**

6.    "Receivership Property" shall consist of all of the Defendants' interest in all claims, causes of action, demands, or defenses that relate to or arise from Above Food Ingredients Corp.'s, and any related party, including, but not limited to, Above Food Ingredients Inc.'s (collectively "Above Food") alleged failure or refusal to provide the Capital Contribution and Inventory Contribution (as those terms are defined in the Verified Complaint) as well as any other claims, demand, damages, or causes of action Defendants may have against Above Food, including, but not limited to, claims for wrongful distributions or the collection of intercompany receivables (the "Above Food Claims") and all the following as they relate to, or are necessary to pursue, the Above Food Claims: (a) Accounts; (b) Chattel Paper; (c) Instruments (including Promissory Notes); (d) Documents; (e) General Intangibles (including payment intangibles); and (f) all claims or causes of action, except for Commercial Tort Claims (the "Receivership Property").

7.    "Receivership Business" shall consist of all or substantially all of the Defendants' assets and operations.

8.    Any party, or the Receiver acting upon its own initiative, may bring a motion before the Court requesting to add to the estate any matters or assets not previously made part of the

3

Receivership Property. Should the Receiver object to the addition of any assets or matters to the estate, such objection shall be deemed good cause for the Receiver to terminate this Receivership.

**Exclusion from Estate**

9.     Notwithstanding anything to the contrary contained in this Order, the Receiver shall not take any action with regard to ownership, operation, control, storage, generation, or disposal of (a) any substance deemed a "hazardous substance", "pollutant", "contaminant", or similar substance under the Comprehensive Environmental Response, Compensation and Liability Act of 1980, as amended, 42 U.S.C. §§ 9601-9675, the Conservation and Recovery Act of 1976, the Solid Waste Amendments of 1984, the Superfund Amendments and Reauthorization Act of 1986, and any other amendments; or (b) any other chemical, toxin, pollutant or substance defined as hazardous or dangerous to human health under any other federal, state or local law, regulation, rule or ordinance, including, without limitation thereto, petroleum, crude oil, or any fraction thereof (all collectively referred to herein as "Hazardous Substances"), without first applying for and obtaining an Order of this Court specifically setting forth the action or actions proposed to be taken by Receiver. Without first applying for and obtaining such an Order of this Court, the Receiver shall have no ownership, control, authorize, or power (neither shall Receiver have any obligation to exercise ownership, control, authorize or power) over the operation, storage, generation or disposal of any Hazardous Substance. All decisions relating to the ownership, operation, control, storage, generation and disposal of any Hazardous Substances shall be resolved by this Court.

**Receiver's Powers and Duties**

10.     The Receiver shall have all of the powers and duties of a limited receiver under federal law and reasonably necessary to exercise control over the Receivership Property and the

4

8:26-mc-00123-UNA42-Doc #2   Filed: 05/06/26   Page 4 of 13 - Page ID # 20

Receivership Business for the limited purpose of pursuing the Above Food Claims, helping to renew Defendants' grain licenses, including obtaining necessary insurance and bonding for renewal of the licenses, and selling the Receivership Business as set forth below. These powers include, but are not limited to, the following:

    a. Borrow money, incur credit and pay expenses incidental to the Receiver's exercise of the powers or otherwise in the performance of the Receiver's duties;

    b. Assert rights, claims, causes of action, or defenses that relate to or arise from the Above Food Claims;

    c. Investigate, pursue, and compromise and settle the Above Food Claims and any and all claims that may arise from or relate to the Above Food Claims;

    d. To collect any information as to the assets, liabilities, equity in, business of, and intellectual property regarding or related to the Defendants or operation of the Receivership Businesses, including the information necessary to request and obtain audited financial information;

    e. Subject to Stricks' current management operations of the day to day business of the company in the ordinary course of business, Receiver may demand, collect, and receive all revenue, income, or proceeds from the operation of the Receivership Property or the Receivership Businesses and their assets, including, without limitation, all receivables, accounts, profits, rents, charges or fees now due and unpaid or hereafter to become due, for the purposes of repaying Defendants' debts to CoBank;

    f. If authorized by an order of the Court, to market, sell, lease, transfer or otherwise dispose of or cause the Defendants to market, sell, lease, transfer or otherwise dispose of any or all of the Receivership Business as a going concern or through a liquidation or other sale process, free and clear of all liens, claims, interests, and encumbrances, (including free and clear of any right(s) of redemption by any party) pursuant to Colorado law as enforced by the United States District Court for the District of Colorado;

    g. Compel any person, including the Defendants, and any party, by subpoena pursuant the Federal Rules of Civil Procedure, to give testimony or to produce and permit inspection and copying of designated books, documents, electronically stored information, or tangible things with respect to the Above Food Claims or any other matter that may affect the administration of the receivership;

    h. Subject to Stricks' current management operations of the day to day business of the company in the ordinary course of business, Receiver may access and

control all bank accounts and financial accounts of the Defendants and/or the Receivership Businesses, together with all funds deposited therein;

i.  To access, obtain, and utilize all electronic login and password information from any third party (including, but not limited to, utility providers, banking institutions, payroll processing services, etc.);

j.  Retain and employ other professionals, including, but not limited to, legal counsel, accountants, appraisers, temporary employees, or other professionals, to assist or represent the Receiver as the Receiver deems appropriate both with respect to the Receiver's role in this action and any other actions the Receiver may initiate or defend in connection herewith;

k.  Retain and employ third-party accountants to conduct a forensic audit of Defendants;

l.  To obtain and/or maintain appropriate insurance coverages for itself as Receiver and enter into a separate agreement with Plaintiff concerning its exposure to liability; and

m.  To take any and all actions the Receiver deems reasonable and appropriate to prevent waste of the Receivership Property and to preserve, secure, manage, maintain, and safeguard the Receivership Property and all other forms of property to which the Receiver is entitled to take possession and control under this Order.

11.    Defendants' current management will continue their role in managing the Defendants' day-to-day business operations.

12.    In order to exercise the authority conferred upon it under this Order, the Receiver is hereby vested with the standing and all power and authority that would or could be wielded by the CEO and/or the general manager of the Defendants, including without limitation the power and authority to: (i) initiate legal proceedings on behalf of Defendants related to or arising from the Above Food Claims;[1] (ii) execute documents, instruments, and resolutions in connection with the Receivership Property or with any sale transaction involving the Receivership Business; and

---

[1] For avoidance of doubt, this includes the ability to initiate legal proceedings against Above Food Ingredients Corp. and any related party, including, but not limited to Above Food Ingredients Inc. for claims arising against these entities.

(iii) have and obtain access to corporate records, reports, communications, and other work product related to the Above Food Claims or as necessary to market, sell, lease, transfer or otherwise dispose of or cause the Defendants to market, sell, lease, transfer or otherwise dispose of any or all of the Receivership Business.

13.    The Receiver shall give notice of the receivership to all creditors and other parties in interest actually known to the Receiver by mail, email, or other means of transmission within 30 days after the time of appointment. The notice of the receivership shall include the date of appointment and the names and addresses of the Defendants, the Receiver, and the Receiver's attorney, if any.

**Taxes**

14.    To the extent necessary in performing its duties to pursue the Above Food Claims, the Receiver shall be entitled to utilize the tax identification numbers associated with the Defendants to the extent permitted by law.

15.    This Order is not intended to create a taxable entity. The Receiver shall have no obligation to prepare or file state, federal, or any other tax returns or other tax-related documents on behalf of the Defendants. The responsibility for such tax filings and payments lies exclusively with the officers, directors, and/or shareholders of the Defendants.

**Third Party Matters**

16.    This Order may be presented to any person, entity, or governmental agency as evidence of the Receiver's authority under this Order.

17.    To the extent Receiver is successful in collecting amounts from Above Food, through litigation or otherwise, such funds shall be distributed to CoBank to be applied to Defendants' outstanding indebtedness or, in the event farmers demand immediate payment, to fund

7

Defendants' operations, at the discretion of the Receiver and Defendants' management and subject to the Court's approval.

The Receiver shall not be bound by any contracts, agreements, understandings or other commitments that the Defendants (or any of their respective directors, equity owners, agents, employees, or other representatives) had, or may have, with third parties, whether oral or written. The Receiver may, by affirmative written ratification executed by the Receiver, agree to become bound to any such contracts, agreements, understandings, or other commitments and may agree to enter into any new or amended contracts, agreements, understandings, or other commitments.

**Receiver's Liability**

18.     Notwithstanding anything to the contrary in this Order, the liability of the Receiver and any agents or employees of the Receiver are governed by caselaw and statute, including, but not limited to *Barton v. Barbour*, 104 U.S. 126, 127 (1881), 28 U.S.C. § 959(a), and Federal Rule of Civil Procedure 66.

**Advances to the Receiver**

19.     Within 30 days following appointment, the Receiver shall prepare a budget which shall estimate the costs to be incurred during the course of the Receivership proceeding, which budget shall be provided to the Plaintiff and Defendants and which shall include a reasonable budget for costs and attorneys' fees expected to be incurred in pursuing the Above Food Claims. The budget may include amounts which the Receiver may retain for a period of up to 120 days after the completion of the Receiver's work (or such longer or shorter period as the court may direct), to pay, as necessary, the costs of the final accounting, managing wind down issues and the preparation for, and appearance at, a hearing(s) on a motion(s) to obtain an order discharging the

Receiver, etc. Funds held but which are ultimately unused by the Receiver shall be returned to the Plaintiff or be otherwise applied pursuant to order of the Court.

20.    The Plaintiff may advance funds necessary to pay expenses of the Receivership Property or as necessary to market, sell, lease, transfer or otherwise dispose of any or all of the Receivership Business.  To the extent such sums are advanced by Plaintiff, they shall be secured with the full benefit of the original priority of the indebtedness evidenced by the Notes, Security Agreements, and various credit facilities extended by Plaintiffs to the Defendants.  Interest on all sums so advanced shall accrue from the date such advances are made at the same rate of interest as the indebtedness in the Notes and Security Agreements and shall be part of the amount due pursuant to the Notes and Security Agreements.  If such advances are made after a foreclosure sale, they shall also accrue interest and shall be part of the sum required to be paid to redeem from the foreclosure sale. Any funds advanced by Plaintiff which are ultimately unused by the Receiver shall be returned to the Plaintiff or be otherwise applied pursuant to order of the Court

21.    To the extent not funded by Plaintiff, the Receiver's costs and expenses shall be paid or deposited with the Receiver by the Defendants.  Any funds advanced by Defendants which are ultimately unused by the Receiver shall be returned to the Defendants or be otherwise applied pursuant to order of the Court.

**Monthly Reports**

22.    The Receiver shall file monthly reports with the Court within 15 days after the end of each monthly period (the "Monthly Operating Report") setting forth the activities of the Receiver. The Receiver shall not include or disclose information protected from disclosure by the attorney-client privilege or work product doctrine in the Monthly Operating Report or otherwise. If such information is necessary for the Court's consideration of any issue, the Receiver may

9

provide such information to the Court *in camera* without waiver of any privilege or protection from disclosure such information may have. If any issues arise out of the Monthly Operating Report, along with the Receiver's compensation or reimbursement (including legal fees and expenses incurred by the Receiver), then Defendants must file a motion in accordance with the United States District Court for the District of Colorado's local practices.

23.    Any objection must identify with specificity all items in the Monthly Operating Report to which objection is made, the grounds for the objection, the facts supporting the objection and any legal authority therefore. The Receiver shall have 14 days from the filing of the Monthly Operating Report to respond to any such objection and may request that the Court set a hearing or that the Court rule on the written submissions.

24.    The Receiver shall file a final report and accounting at the time of the discharge of the Receiver and termination of the Receivership.

**Compensation**

25.    Upon appointment, the Receiver shall be paid by Defendants an initial retainer of $50,000.00 (the "Retainer"). The Receiver shall be compensated at its customary hourly rates, which are subject to reasonable increases in January of each year. Mr. Smith's current, approved hourly rate is $580.00. In addition to the Receiver's fees, the Receiver shall be reimbursed by Defendants or by Plaintiff, at Plaintiff's sole discretion, for its reasonable fees and costs, including, without limitation, legal fees, travel expenses, litigation costs, parking and other business expenses associated with the Receivership. Use of personal automobiles may be billed at the rate allowed under the Internal Revenue Code.

26.    The Receiver's compensation or reimbursement shall be disclosed in the Monthly Operating Reports filed with the Court. The Receiver may pay and reimburse itself with advances

from the Plaintiff or the Defendants. To the extent the Receiver draws on the Retainer to pay its fees and expenses, such draws shall be treated as advances by the Defendants pursuant to this paragraph and paragraph 20 of this Order.

**Claims Process**

27.     If the Receiver determines there is a reasonable likelihood that funds will be available for distribution to creditors other than CoBank, the Receiver shall file a motion with the Court requesting an Order to Present and File Claims and bar date.

**Distributions**

28.     Before any interim or final distribution to creditors and/or equity holders is made, the Receiver shall file a distribution schedule listing the proposed distributions. The distribution schedule may be filed at any time during the case or may be included in the final report.

29.     The Receiver shall give notice of the filing of any proposed distribution schedule to all persons on the Court service list or that have filed proofs of claim.

30.     Subject to and consistent with the Receiver's powers set forth above, the Receiver shall distribute any proceeds from the operation of the Defendants' business, including the sale of the Defendants' assets in the ordinary course of business, as follows:

  a. To payment of Receiver's fees and expenses as described above;

  b. To payment of expenses incurred in connection with the Receivership Property or the sale of the Receivership Business in the ordinary course after the Receiver's appointment, including paying professionals such as attorneys and accountants;

  c. To pay the holders of Receiver's Certificates issued by the Receiver for advances made pursuant to paragraphs 19 or 20 of this Order or otherwise;

11

d. To the creditors of the estate in order of priority as determined by the Court; and

e. To make payments to the Parties in accordance with the direction of the Court.

**Cooperation & Parties' Duties**

31. Upon the Receiver's request, the Defendants shall affirmatively cooperate and assist the Receiver to enable the Receiver to carry out its duties under this Order. Furthermore, parties, including but not limited to Above Food, are hereby enjoined from interfering in any way with the Receiver's ability to carry out such duties, including pursuing the Above Food Claims.

32. The Defendants, their officers, directors, agents, employees and representatives shall immediately fully cooperate with and assist the Receiver so as to enable the Receiver to assume and discharge its duties under this Order and applicable law, including cooperating by voluntarily disclosing all financial information and shall, upon request, promptly, but in no event no more than 14 calendar days after a request, appear for an interview with the Receiver to assist the Receiver in its work.

33. The Defendants, Receivership Businesses, their officers, agents, employees, directors and/or representatives, equity owners, and/or any other person, including consultants and advisors, or otherwise acting in concert with or on behalf of the Defendants are hereby enjoined from interfering in any way with the conduct of the Receiver's duties and obligations pursuant to this Order and under applicable law. In addition, the Defendants, their officers, agents, employees, directors and/or representatives, and/or any other person, including consultants and advisors, or otherwise acting in concert with or on behalf of the Defendants, shall cooperate with all requests of the Receiver.

**Termination**

12

8:26-mc-00123-UNA-042  Doc # 2  Filed: 05/06/26    Page 12 of 13 - PageID # 28

34.     The Receiver shall serve until the entry of an order by this Court terminating the receivership or appointing a substitute receiver. For good cause, the Receiver may file a motion seeking to discharge the Receiver and terminate its obligations under this Order on an expedited basis and with shortened notice. For purposes of this paragraph, good cause for expedited termination shall include, but is not limited to: (a) insufficient funds available for payment of the Receiver's fees and/or expenses; (b) insufficient funds available for payment of insurance premiums for insurance to cover Receiver; and/or (c) the unwillingness or inability of Plaintiff to fund the Receiver's fees should Defendants be unable to do so.

**Instructions**

35.     At any time during the course of this Receivership, should the Receiver be uncertain as to its duties, responsibilities, or the appropriateness of any action proposed by the Receiver, the parties, or third parties, the Receiver shall be permitted to request instructions from this Court by way of motion. Any such motion shall be treated as a non-dispositive motion and shall be served and filed in accordance with the Local Rules of Practice of the United States District Court for the District of Colorado – Civil and any other applicable rules or orders of this Court (the "Local Rules"). Any responses and replies shall also be served and filed in accordance with the Local Rules. Notwithstanding the foregoing, the Court intends its Order with respect to establishing this Receivership and appointing this Receiver to be broadly construed to provide the Receiver with the power and authority necessary and appropriate to fulfill its duties as set forth herein and under applicable law.

**Non-Cooperation**

36.     In the event that the Defendants, their officers, agents, employees, directors and/or representatives, equity owners, and/or any third party in receipt of this Order refuse to comply with

13

the terms of this Order or the exercise of the Receiver's powers and authorization granted hereunder, such party shall be in violation of this Order. Additionally, the Receiver may file correspondence with the Court notifying the Court of non-compliance and seek issuance of an order directing the non-compliant party to appear at a hearing and show cause why they should not be held in contempt of court. The correspondence filed by the Receiver shall identify the applicable provisions of this Order that have been violated and the alleged failure(s) to comply.

Dated: April 7, 2026.

Philip A. Brimmer
United States District Judge

14